**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARTUR BALBABYAN,<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondents. | Case No. 5:26-cv-03879-SP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

## I.

## INTRODUCTION

On July 13, 2026, petitioner Artur Balbabyan, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California ("Adelanto"). Petitioner contends his detention violates his right to procedural and substantive due process under the Fifth Amendment, the Administrative Procedure Act ("APA"), and 8 U.S.C. § 1226(a). Petitioner seeks immediate release from immigration custody, as well as declaratory and other injunctive relief.

On July 20, 2026, respondents filed an Answer, stating that petitioner lacks pre-detention hearing rights in the first instance, and that in any event he is entitled only to a hearing rather than release. Docket no. 8. Petitioner filed a Reply the same day. Docket no. 9.

For the reasons discussed below, the court grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## BACKGROUND

Petitioner is a citizen of Armenia. Pet. at 2, Ex. A. On June 10, 2025, petitioner entered the United States on a visitor's visa with his wife and two minor children. *Id*. Petitioner has lived in the United States with his family since then. *Id.* at 2, 25.

On November 28, 2025, petitioner filed for asylum, including his family as derivatives. *Id*. at 2, Ex. B. Petitioner's asylum claim hearing was scheduled for August 21, 2029. *Id.* at 2, Ex. D. In the meantime, petitioner attended his ICE appointments and interviews. *Id.* at 2, Ex. C.

On June 22, 2026, petitioner was arrested by the Burbank Police Department on suspicion of petty theft. *Id.* at 3, Ex. E. Upon release from custody the next day, he was detained by ICE agents. *Id.* at 3. The ICE officers served him with neither an arrest warrant nor a notice to appear at the time. *Id.* Petitioner was not provided an individualized custody determination. *Id*. at 29.

Petitioner was held at the ICE office at 300 N. Los Angeles Street and was subsequently transferred to Adelanto. *Id.* at 3. Petitioner suffers from kidney disease and is at risk of kidney damage if his medical care is delayed. *Id.* at 3, Ex. H.

## III.

## DISCUSSION

Petitioner contends his detention violates his substantive due process rights under the Fifth Amendment, his procedural due process rights under the Fifth Amendment, the

APA, and 8 U.S.C. § 1226(a). *Id.* at 23, 25, 29, 31, 33. Respondents maintain that petitioner was not entitled to a pre-detention hearing, and if such a right exists the appropriate remedy is a hearing rather than release. Answer at 1-2.

**A. <u>This Court Has Jurisdiction Over the Claims in the Petition</u>**

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues he should be released from respondents' custody because, inter alia, his detention violates the Due Process Clause of the Fifth Amendment. *See* Pet. at 23-25. He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging his detention rather than any of the

three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B. Petitioner's Detention Without Adequate Procedural Protections Violated Due Process**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

**1. Petitioner Has a Protected Liberty Interest**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues he has a liberty interest in his release from immigration custody. *See* Pet. at 23-25.

Courts have repeatedly recognized that conditional release from custody may give rise to a protected liberty. *See Young v. Harper*, 520 U.S. 143, 147-49 (1997) (conditional release from custody may give rise to a protected liberty interest); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Some courts have found that the government's decision not to detain asylum applicants similarly gives rise to a protected liberty interest. *See Kalkan v. Chestnut*, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026) (petitioner had liberty interest in being free from detention because immigration officials were aware of his presence, initially approved of that presence, and did not promptly detain him when that

status expired); *Kharitonova v. Albarran*, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (petitioner had the same liberty interest as an individual initially detained and released because the government made a decision not to detain her in the first place); *but see Jemna v. Warden of Otay Mesa Det. Ctr.*, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026) ("Although Petitioner has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole.").

Here, petitioner has a liberty interest in his release. Petitioner entered the United States in 2025 on a visitor visa and has a pending asylum application. ICE was aware of his presence given his application and his appearances at ICE appointments and interviews, but chose not to detain him. Petitioner established a life for himself in the United States and therefore has acquired a protected liberty interest in his release from immigration custody. *See, e.g., Xianming H. v. Warden*, 2026 WL 1283415, at *3 (E.D. Cal. May 11, 2026) (petitioner, who overstayed a tourist visa and has a pending asylum application, "has a clear liberty interest" that is protected by due process); *Saadi v. Larose*, 2026 WL 892831, at *4 (S.D. Cal. Mar. 30, 2026) (noncitizen who entered on a tourist visa and has a pending asylum application "has developed an interest in remaining during his time here"); *Kharitonova*, 2026 WL 531441 at *2 (same).

**2. <u>Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Detention Under the Due Process Clause</u>**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

> safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here his interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). Petitioner, who was allowed to remain free pending his asylum application, has his wife and children in the United States. *See* Pet. at 2. As such, his personal interest in remaining out of immigration custody is high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents, in effect, already made such a determination with respect to petitioner when they decided not to detain him in the first place. *See, e.g., Kalkan*, 2026 WL 7881125, at *1; *Kharitonova*, 2026 WL 531441, at *2-*3; *see also Victor B.P. v. Warden*, 2026 WL 1493987, at *4 (E.D. Cal. May 28, 2026) (state court judge's release of petitioner suggests he found petitioner was not a danger to the community). It is true that petitioner has since been cited for petty theft. Nonetheless, respondents do not argue that petitioner is a danger to the community or flight risk. Indeed, respondents primarily argue that the

appropriate remedy is a post-detention hearing rather than release, largely ignoring the underlying alleged constitutional violation. Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. The government does not dispute that its interest in detaining petitioner without any procedural protections is low. *See Xianming H.*, 2026 WL 1283415, at *4 ("[T]he Government's interest is low."); *see also Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025) ("there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing"). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Xianming H.*, 2026 WL 1283415, at *4; *Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted).

In sum, given petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of his liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment. Because petitioner's detention was unlawful, the proper remedy is release from custody. *See Victor B.P.*, 2026 WL 1493987, at *5; *Xianming H.*, 2026 WL 1283415, at *5; *Benipal v. Rokosky*, 2026 WL 1355010, at *15 (D. Ariz. Apr. 24, 2026); *Kharitonova*, 2026 WL 531441, *1, *4; *see also Singh*, 2025 WL 3251437, at *9.

### 3. Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted). In the context of both parole and probation revocations, the nearest analogues to petitioner's situation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See, e.g., Singh*, 2025 WL 3251437, at *8; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases). Indeed, in contexts similar to here – where an individual lawfully entered the United States, applied for asylum, and was not initially detained – courts have found that the government should provide notice and a pre-deprivation hearing to determine if the noncitizen is a danger to the community or a flight risk. *See, e.g., Victor B.P.*, 2026 WL 1493987, at *5; *Yeremyan v. Warden*, 2026 WL 567475, at *5 (C.D. Cal. Feb. 26, 2026); *Saadi*, 2026 WL 892831, at *5; *Kalkan*, 2026 WL 788112, at *2; *Kharitonova*, 2026 WL 231441, at *4; *but see Zakharenkova v. Mullin*, 2026 WL 145424, at *5 (C.D. Cal. May 19, 2026) (unlike those who were re-detained after being release on bond, petitioner's due process rights are adequately addressed by a prompt post-deprivation hearing pursuant to § 1226(a)).

## C. Petitioner's Remaining Claims

Petitioner also argues that respondents have violated his right to substantive due process under the Fifth Amendment and the APA. Pet. at 23, 31. Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's remaining claims. Petitioner may raise the claims again if he is subject to any future detention.

## IV.

## <u>ORDER</u>

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Artur Balbabyan (A# 242-481-446) from immigration custody; (3) respondents shall return any confiscated property and documents to petitioner upon his release; (4) respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; and (5) respondents shall file a status report no later than September 16, 2026, confirming that petitioner has been released from respondents' custody.

Dated: September 11, 2026

SHERI PYM
United States Magistrate Judge